UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
JIAJING (BEIJING) TOURISM CO., LTD,)
                               )
             Plaintiff,        )
                               )
        v.                     )        CIVIL ACTION
                               )        No. 22-11189-WGY
CAROLYN S. KAPLAN,             )
AEROBALLOON USA, INC.,         )
                               )
             Defendants.       )
_____)
```

YOUNG, D.J.                              July 9, 2024

**FINDINGS OF FACT AND RULINGS OF LAW**

## I.   INTRODUCTION

This is the sequel to civil action no. 20-11313-WGY, aff'd
Jiajing (Beijing) Tourism Co., Ltd. v. Aeroballoon USA, Inc.,
2024 WL 723982 (1st Cir. 2024) ("Jiajing I").  Here, Jiajing
(Beijing) Tourism ("Jiajing") attempts to recover a debt owed
to it by a Massachusetts hot air balloon company, Aeroballoon USA,
Inc. ("Aeroballoon").  Ibid.  In this suit, Jiajing brings
claims against Aeroballoon's owner's wife, Carolyn S. Kaplan
("Kaplan"), seeking recovery of monetary transfers her husband
made to her to avoid paying his debt to Jiajing.  In its initial
Complaint, Jiajing brought eight claims: fraudulent transfer
pursuant to Massachusetts General Laws chapter 109A Section
5(a)(1) (Count I); fraudulent transfers pursuant to
Massachusetts General Laws chapter 109A Section 5(a)(2)(i)

(Count II); fraudulent transfers pursuant to Massachusetts General Laws chapter 109A Section 5(a)(ii) (Count III); fraudulent transfers pursuant to Massachusetts General Laws chapter 109A Section 6(a) (Count IV); fraudulent transfers pursuant to Massachusetts General Laws chapter 109A Section 6(b) (Count V); imposition of constructive trust (Count VI); imposition of resulting trust (Count VII); and unjust enrichment (Count VIII). Not. Removal , ECF 1-3 ("Compl.").

## II.  PROCEDURAL HISTORY

On July 15, 2022, Jiajing filed this Complaint against Kaplan and her co-defendant, Aeroballoon, in the Massachusetts Superior Court sitting in and for the County of Suffolk. Def.'s Mem. Supp. Summ. J. 6-7, ECF No. 68. Kaplan and Aeroballoon timely removed to this Court on July 22, 2022. Notice of Removal, ECF No. 1. On December 19, 2022, Kaplan and Aeroballoon both filed individual motions to dismiss the action. After oral argument on each motion, both were denied. Defs.' Mot. Dismiss, ECF. Nos. 28, 30; Electronic Clerk's Notes, ECF No. 51.

Kaplan then filed a motion for partial summary judgment as to Counts II, III, IV, and V of Jiajing's complaint on December 14, 2023. Def.'s Mem. Supp. Summ. J. 11. Aeroballoon filed its own motion for summary judgment on January 19, 2024, as to Counts I-V of the Jiajing's complaint. Def.'s Mot. Summ. J.,

ECF No. 74.  At oral argument on the motions, Aeroballoon

withdrew its motion for summary judgment, and the Court granted

Kaplan's motion for partial summary judgment as to Counts II,

III, IV, and V[1]  Electronic Clerk's Notes, ECF No. 88.  Pretrial

conference followed, at which the Court dismissed the defendant

Aeroballoon without prejudice.  Electronic Clerk's Notes, ECF

No. 96.  This trial followed on April 1-4, 2024.  Electronic

Clerk's Notes, ECF No. 97.

     At the conclusion of trial, this Court announced a partial

ruling, including a finding that during the relevant period,

Aeroballoon was insolvent and that, therefore, under a theory of

constructive fraud, a judgment in favor of Jiajing was

warranted.  The Court did not calculate the specific award at

that time, instead choosing to wait until a calculation of

marital interest could be completed.  The Court also stated that

it could not conclude, by a preponderance of the evidence, that

Kaplan knew of the actual fraudulent transfers perpetrated by

Kaplan's husband, David A. Hase ("Hase").  Finally, the Court

---

     [1] Kaplan's motion for partial summary judgment resulted in
the Court determining that: (a) all claims seeking to recover
constructively fraudulent transfers (Counts II through IV) made
before July 15, 2018, were time-barred by the applicable four-
year limitations period set forth in Mass. Gen. L. Ch. 109A, §
10(b); and (b) all claims seeking to recover insider transfers
(Count V) were time-barred by the one-year limitations period
set forth in Mass. Gen. L. Ch. 109A, § 10(c).  See Transcript of
1:22-cv-11189-WGY, United States District Court for the District
of Massachusetts (Mar. 7, 2024) 10:15-20, ECF No. 93.

reserved judgment on whether the issues raised at trial were subject to issue preclusion due to privity between Kaplan and Hase.

## III. FINDINGS OF FACT

### A.   The Parties

Plaintiff Jiajing (Beijing) Tourism Co., Ltd is a corporation organized under the laws of the People's Republic of China.  Compl. 2.  Defendant Aeroballoon is a corporation duly organized under the laws of the Commonwealth of Massachusetts. Id.  Defendant Kaplan is an individual residing in Massachusetts.  Kaplan is the wife of Hase, Aeroballoon's sole owner, director, officer, and controlling shareholder.  Id.

On or around January 14, 2016, Kaplan's co-defendant, Aeroballoon, entered into a contract to sell air balloons to Jiajing.  Def.'s Mem. Supp. Summ. J. 2.  Between January 2, 2016, and May 18, 2016, Jiajing made three payments to Aeroballoon totaling $1,018,940.00 (50% of the contract value). Id. at 3.

### B.   Previous Litigation

After a contract dispute arose between Jiajing and Aeroballoon, on June 8, 2018, Jiajing filed a request for arbitration, pursuant to the terms of its contract with Aeroballoon, with the Chinese International Economic and Trade Arbitration Commission ("Chinese Commission").  Jiajing achieved

an arbitration judgment in its favor from the Chinese Commission
in the amount of $1,410,739.01.  Def.'s Mem. Supp. Summ. J. 2-5.
That award was confirmed by this Court on April 21, 2021.  Order
Conf. Arbitration Award, ECF No. 56, No. 20-cv-11313-WGY
(Jiajing (Beijing) Tourism Co. Ltd. v. AEROBALLOON USA, INC.).

    After receiving the arbitration award from the Chinese
Commission, Jiajing filed suit against Aeroballoon and Hase in
this Court (Jiajing I), claiming not only a right to the
arbitration award and related relief, but also both fraudulent
transfer and constructive trust (Count III) and violations of
Massachusetts General Laws chapter 93A (Count IV) against Hase.
Am. Compl., ECF No. 10, No. 20-cv-11313-WGY (Jiajing (Beijing)
Tourism Co. Ltd. v. AEROBALLOON USA, INC.).  After a three-day
jury trial in this Court, a jury determined that Hase was liable
for all claims Jiajing brought against him.  Jury Verdict, ECF
No. 228, No. 20-cv-11313-WGY (Jiajing (Beijing) Tourism Co. Ltd.
v. AEROBALLOON USA, INC.).  On May 16, 2023, this Court issued
final judgment and ordered Aeroballoon and Hase to pay Jiajing
$1,410,739.01, together with attorneys' fees and interest.
Final J, ECF No. 256, No. 20-cv-11313-WGY (Jiajing (Beijing)
Tourism Co. Ltd. v. AEROBALLOON USA, INC.).  This action stems
from Jiajing's continued efforts to recover Aeroballoon and
Hase's debt.  Def.'s Mem. Supp. Summ. J. 2.

### C.   The Kaplan Transfers

During discovery in preparation for the trial against Aeroballoon and Hase, Jiajing recovered bank records for Aeroballoon, Hase, and Kaplan.  Between February 24, 2016, and February 12, 2021, Kaplan received thirty-one (31) money transfers (the "Kaplan Transfers") directly or indirectly from Aeroballoon into her joint accounts with Hase, either the couple's Bank of America Joint Checking Account (the "Joint Checking Account") or the couple's Bank of America Joint Money Market account (the "Joint Money Market Account").  Def.'s Mem. Supp. Summ. J. 10.  Fifteen (15) Kaplan Transfers occurred prior to June 8, 2018, the date on which Jiajing first notified Hase of its request for arbitration with the Chinese Commission. Compl. ¶¶ 39-50.

A lawyer by trade, Kaplan claims that she was entirely unaware of the sources of her family's finances.  See Transcript of 1:22-cv-11189-WGY, United States District Court for the District of Massachusetts (Apr. 1, 2024) 103:4-5, 109:8-9, ECF No. 103 ("I guess I just don't know where the money came from."); id. ("I don't know what kind of salary [Hase] had."). At the time of the transfers, Kaplan was no longer working at her previous law firm and had chosen to stay home and take care of the family.  Kaplan was aware of the arbitration request from Jiajing in 2018.  See id. 97:23-25.

IV.   **CONCLUSIONS OF LAW**

A.   **Legal Standard**

"The concept underlying fraudulent transfer is easily grasped."  <u>In re Palladino</u>, 942 F.3d 55, 58 (1st Cir. 2019). Jiajing alleges three types of fraudulent transfers, as outlined in Massachusetts General Laws chapter 109A sections 5 and 6 and, after motions practice, four claims on two types of fraudulent transfer survive.  The types include actual fraud, wherein a debtor purposefully defrauds a creditor; and constructive fraud, wherein, essentially, a debtor negligently defrauds a creditor. Under section 5, a transfer is fraudulent when done:

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Mass. Gen. Laws Ann. ch. 109A, § 5.  Under section 6(a), transfer is fraudulent when the creditor's claim arose "before the transfer was made," was made without the debtor receiving a "reasonably equivalent value in exchange for the transfer," and

was made while the debtor was insolvent.  Mass. Gen. Laws Ann.
ch. 109A, § 6a.

In defining "reasonably equivalent value", courts are to
"compare what was given with what was received."  In re Tri-Star
Techs. Co., Inc., 260 B.R. 319, 325 (Bankr. D. Mass. 2001)
(Boroff, B.J.).  In making this determination, "both direct and
indirect benefits should be considered."  Baldiga v. Moog, Inc.
(In re Comprehensive Power, Inc.), 578 B.R. 14, 33 (Bankr. D.
Mass. 2017) (Panos, B.J.).  A court "must keep the equitable
purposes of the statute firmly in mind, recognizing that any
significant disparity between the value received and the
obligation assumed . . . will have significantly harmed . . .
innocent creditors."  Tri-Star, 260 B.R. at 325-26.

   B.  Discussion

      1.  Privity

The Court first addresses the question of issue preclusion.
At trial, Jiajing requested this Court consider whether the jury
findings in the previous trial,[2] Jiajing I, ought have preclusive
effect, arguing that as the facts and issues were identical in

_____

      [2] The jury in Jiajing I determined that all Kaplan Transfers
constituted fraudulent transfers under Massachusetts General
Laws chapter 109A section 5(a)(1), referred supra as "actual
fraud."  The jury further held that each fraudulent transfer
constituted an "unfair" or "deceptive" act pursuant to
Massachusetts General Laws chapter 93A.  See Jury Verdict, ECF
No. 228, No. 20-cv-11313-WGY (Jiajing (Beijing) Tourism Co. Ltd.
v. AEROBALLOON USA, INC.).

each case, and as Kaplan's own intent was irrelevant, her defenses here were entirely derivative of Hase's at the first trial. See Pl.'s Am. Post-Tr. Br. 10, ECF No. 107. Kaplan, however, correctly responds that the First Circuit has noted that in such a situation, the party in the first action must have "understood [itself] to be acting in a representative capacity or the original court must have taken care to protect the interests on the nonparty." Def.'s Post-Tr. Br. 4, ECF No. 101; see also Santiago-Martinez v. Fundacion Damas, Inc., 93 F.4th 47, 53 (1st Cir. 2024) (citing Taylor v. Sturgell, 553 U.S. 880, 900 (2008)).

Here, Jiajing filed its suit against Kaplan in July 2022, months before Jiajing's case against Hase was set to begin. See Def.'s Post-Tr. Br. 2. The parties then agreed to stay the present action pending the results of Jiajing I. Id. As Hase was aware of the pending case against his wife, he would not have understood himself to be acting in a representative capacity. Although it is true that any defenses Kaplan raises here must be derivative to those Hase raised in Jiajing I, as Kaplan was a party in this action separate from Jiajing I, Hase cannot be said to have "understood" that he must act in a representative capacity.

Jiajing further argues that this Court ought apply issue preclusion because fairness so dictates, as Kaplan had "an

opportunity to litigate her claim."  Pl.'s Am. Post-Tr. Br. 12.
Jiajing explains that Kaplan "chose not to participate in the
Hase case," and that therefore, she had a full and fair
opportunity to litigate that she simply did not take.  Id. at
13.  Jiajing, however, could have amended its complaint to add
Kaplan as a defendant in Jiajing I.[3]  Kaplan's choice not to
intervene was entirely valid; "[t]he law does not impose upon
any person absolutely entitled to a hearing the burden of
voluntary intervention in a suit to which he is a stranger."
Martin v. Wilks, 490 U.S. 755, 762 (1980); see also Perez-Guzman
v. Gracia, 346 F.3d 229, 237 (explaining that "a party seeking a
judgment binding on another cannot obligate that person to
intervene; he must be joined").

As Kaplan and Hase are not in privity on the issues at bar
in the current litigation and, as Kaplan did not have a full and
fair opportunity to litigate in Jiajing I, this Court does not
apply issue preclusion.  The Court therefore holds to its

---

[3] Jiajing argues that by the time it filed its Complaint in
the instant case, "the first case had already been scheduled"
and the "deadline for amending the Petition had expired."  Pl.'s
Am. Post-Tr. Br. 4 n.1.  Jiajing, however, won full access to
Aeroballoon's business and banking records on July 21, 2021,
approximately one year prior to filing the Complaint in this
case.  Id. at 3.  Had Jiajing been more expeditious in its
review of the records, it could have added Kaplan well-prior to
the deadline for amending its Complaint in Jiajing I.

previous ruling that Kaplan cannot be adjudged liable for actual fraudulent transfer.

### 2. Constructive Fraud/Solvency

The Court does not conclude that Kaplan was aware of the actual fraud perpetrated by her husband, Hase, and therefore, does not adjudge her liable under Count I.  The Court has, however, determined that Kaplan is liable to Jiajing for constructive fraud as outlined in Counts II-IV.

The Court has determined that at the moment that Jiajing notified Hase and Aeroballoon of its request for arbitration, which occurred on June 8, 2018, Kaplan must have been -- and was -- aware of Aeroballoon's troubles; in fact, she admitted as much at trial.[4]  The Court previously determined that Aeroballoon was insolvent during the relevant time period, and upon notice from Jiajing that it was seeking arbitration, Kaplan was on notice that Aeroballoon's profits from Jiajing were in dispute. Any transfers into Kaplan and Hase's joint bank accounts after that date, therefore, were fraudulent transfers under

---

[4] These "troubles" include that Aeroballoon "was engaged, or was about to be engaged, in a business or a transaction for which Aeroballoon's remaining assets were unreasonably small in relation to the business or transaction," Aeroballoon "intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due," and that Aeroballoon was insolvent or would become insolvent due to the Kaplan Transfers.  See Mass. Gen. Laws ch. 109A §§ 5(a)(2)(i)-(ii), 6(a).

Massachusetts General Laws chapter 109A sections 5(a)(2)(i),
5(a)(2)(ii), and 6(a).

The Court previously determined on summary judgment that
the aforementioned statutes are statutes of repose, and that
therefore, all Kaplan Transfers incorporated in Counts II-IV
made prior to July 15, 2018, are time-barred by the applicable
four-year statute.  See Mass. G.L. c. 109A § 10(b); see also
Electronic Clerk's Notes, ECF No. 88.  The Court, therefore, has
determined that under a theory of constructive fraud, Kaplan is
liable to Jiajing for the transfers that occurred after July 15,
2018.

### 3.  Marital Interest

As the Court noted at trial, though Kaplan was not an
employee of Aeroballoon and did not directly provide services as
an employee to Aeroballoon or Hase, as a wife and mother, she
did contribute to the marriage, and such a contribution must be
taken into account.  To start, the transfers Hase made to the
Joint Checking Account and Joint Money Market Account were used
often for family expenses and, as a joint owner of the accounts,
Kaplan had an interest in the funds once they were transferred.
"As a joint account holder, [Kaplan] had the right to withdraw
or use those funds at [her] discretion."  Lassman v. Cronin, 518
B.R. 1, 8 (D. Mass. 2014) (Casper, J.); see also Rafuse v.
Stryker, No. 090107, 2010 WL 2431921, at *6 (Mass. Super. Apr.

21, 2010) (Fremont-Smith, J.).  There is a legal presumption that Kaplan had both the **right to use** all funds in the account, see id., and that under Massachusetts law, she had a **legal interest** in 50% of the deposited funds.  In re Rauh, 119 F.3d 46, 50 (1st Cir. 1997).  Hase, however, in fraudulently transferring the funds into the joint accounts, did not have a legal interest in the funds transferred, and therefore, Jiajing may recover the funds fraudulently transferred into the joint accounts.  The question, therefore, is what percentage of the funds transferred were fraudulently transferred.

Under Massachusetts General Laws chapter 109A sections 5(a)(2)(i), 5(a)(2)(ii), and 6(a), a transfer is fraudulent when it occurs without the debtor receiving a reasonably equivalent value in return.  Mass. G.L. c. 109A 5(a)(2)(i)-(ii), 6(a). "Whether equivalent value is received for the transfer depends upon all the circumstances of the transaction." Rafuse, 2010 WL 2431921, at *7.  As in Rafuse, where Superior Court Justice Thayer Fremont-Smith determined that a debtor's wife provided "some consideration, as she substantially contributed to the family by caring for the children full-time and maintaining the household," this Court has determined that Kaplan provided some consideration to Hase.  Though this consideration is not a reasonably equivalent value that would justify Kaplan retaining

all fraudulently transferred funds, it does warrant a marital interest calculation.

In this Court's determination, Kaplan is entitled to a marital interest in a 50% portion of all Kaplan Transfers that were used on family affairs.  There were thirteen months throughout the relevant period (after July 2018) in which Kaplan Transfers occurred into the Joint Checking Account, and one month in the relevant period in which a Kaplan Transfer occurred in the Joint Money Market Account.  The Court has calculated Kaplan's marital interest based on the following example: assume that Hase and Kaplan share a joint bank account, which, at the beginning of a given month, has a starting balance of $100 sourced from legitimate funds.  During the course of the month, Hase places another $500 into the account, and that $500 is "tainted," that is to say, is fraudulently transferred.  Also, during the month, the family spends $300 from the joint bank account on family affairs.  Half of that $300 can be construed as a payment for Kaplan's contribution to the household; however, as only $100 was "untainted",[5] $200 of the $300 spent is "tainted", resulting in Kaplan receiving $50 in "tainted" funds.

_____

[5] In this example, and in its further calculations below, the Court assumes that, when paying for family expenses, "untainted" funds were used up before drawing from the "tainted" funds.

Jiajing, therefore, would only be able to recover the $300 left
in the account, as well as $150 from the $300 spent, for a total
of $450, even though, but for Kaplan's marital contribution, it
would actually be owed $500.  Using this general formula,[6] the
Court has reviewed the records for the Joint Checking Account
and Joint Money Market Account to calculate Jiajing's award.
The results of these calculations are attached to this opinion.
See App. A, Kaplan Transfer Marital Contribution Calculations -
Joint Checking Account ("App. A"); App. B, Kaplan Transfer
Marital Contribution Calculations - Joint Money Market Account
("App. B").

    At trial, Kaplan stipulated that 88% of the funds withdrawn
from both the Joint Checking Account and the Joint Money Market
Account were used on family affairs.  See Transcript of 1:22-cv-
11189-WGY, United States District Court for the District of
Massachusetts (Apr. 4, 2024) 17:23-25, 18:1-10, ECF No. 105.

---

    [6] Put differently, to calculate marital interest, the Court
first takes the total balance of the account, which is the
summation of the starting balance of legitimate, untainted funds
($100) plus the tainted transfers ($500), for a total of $600.
Next, the Court subtracts the expenses spent on family affairs
($300), which leaves $300 in the joint account.  The Court
assumes that those $300 left in the joint account are from
tainted funds.  Then, to calculate what Jiajing recovers, the
Court adds Hase's portion of the family expenses ($150), which
is half the total family expenses.  Jiajing ultimately may
recover what is left in the account ($300) plus Hase's portion
of the family expenses ($150), for a total of $450.  The other
$50 in tainted funds, however, is kept by Kaplan, as her marital
contribution.

Using the bank records provided, therefore, the Court was able to calculate the amount of funds withdrawn from either account each month for use on family affairs (App. A, Column K).

The Court's calculations for the Joint Checking Account begin with the first month after July 2018 in which a Kaplan Transfer occurred, the period starting January 8, 2019.  First, the Court calculated the untainted beginning balance of the bank account (App. A, Column D).  To do so, the Court took the account's balance from the previous month (App. A, Column M plus Column F, subtracting Column L) and subtracted the total of any withdrawals in excess of the untainted funds that had occurred in the previous month of a Kaplan Transfer (App. A, Column O for previous month).[7]  If that calculation (App. A, Column O) resulted in a negative balance, the untainted beginning balance was adjudged to be zero, as all funds in the month's beginning balance were therefore tainted.  To calculate whether a month's withdrawals were in excess of the account's untainted funds (App. A, Column O), the Court first calculated the month's total untainted funds in the account (App. A, Column I) by combining the untainted beginning balance (App. A, Column D) and the sum of any untainted other transfers to the account (App. A, Column

---

[7] This calculation was necessary in order to ensure previous months' tainted funds were not classified as untainted upon the entry of a new banking period.

G).  Once a month's total untainted funds were calculated, that number was subtracted from the total withdrawals from the account (App. A, Column J).  If the resulting number was negative, the account had more untainted funds in the account than funds withdrawn in that month.  If the resulting number was positive, that amount was how much withdrawn funds were funded through tainted funds (App. A, Column O).

Once these calculations were complete, for any month in which funds withdrawn from the account were in excess of the untainted funds, the Court then calculated whether such tainted funds were used on Kaplan's share of spending on family affairs (App. A, Column Q).  To answer this question, first, the Court calculated the percentage of withdrawals from the account in that month used on family affairs (88%) (App. A, Column K), and second, the Court halved that amount (to account for Kaplan's share) and subtracted from it the total of untainted funds from that month (beginning untainted balance and untainted transfers combined) (App. A, Column I).  Again, if the resulting number was negative, Kaplan's share of family withdrawals from the account was less than the total untainted funds in the account, and therefore, no tainted funds were withdrawn as part of that share.  If the resulting number was positive, however, that was the amount of tainted funds used for family affairs that were covered by Kaplan's marital interest.  The Court's calculations

show that there were only three months in which Kaplan could recover marital interest (i.e., the positive entries in Column Q).

For the periods in which no tainted funds were withdrawn to be used for family affairs by Kaplan (Kaplan's one-half share) (i.e, the entries in Column Q showing a negative value), Kaplan is owed no marital interest, and therefore Jiajing can recover the total amount transferred.  For the three months throughout the period of transfers in which tainted funds were used for family affairs by Kaplan,[8] Kaplan is owed a marital interest, and therefore, Jiajing may only recover the total amount of tainted funds transferred that month (App. A, Column E) less the amount of tainted funds used by Kaplan for family affairs (App. A, Column Q).  In total, of a possible $215,989.00 in funds transferred to the Joint Checking Account, Jiajing may recover $198,534.86.

The calculation is much the same for the Joint Money Market Account; however, only one Kaplan Transfer occurred into the Joint Money Market Account during the period.  See App. B. Therefore, the beginning balance is determined to be entirely untainted, and as that balance was well in excess of any

---

[8] These periods are November 4, 2020, to December 7, 2020; August 7, 2021, to September 7, 2021; and February 3, 2022, to March 8, 2022.  See App'x A.

withdrawals from the account that month, Kaplan is owed no marital interest on that transfer, and Jiajing may recover the total $18,800.00 transferred.  In total, Jiajing may recover $217,334.86, the combination of $198,534.86 in transfers to the Joint Bank Account and $18,800.00 to the Joint Money Market Account.

## V.   CONCLUSION

The Court previously announced a judgment of $272,389 in favor of Jiajing, minus any yet-to-be-calculated marital interest.  <u>See</u> Transcript of 1:22-cv-11189-WGY, United States District Court for the District of Massachusetts (April 4, 2024) 39:6-9, ECF No. 105.  That judgment mistakenly included two Kaplan transfers that occurred in 2018 prior to the period within the statute of repose wherein Jiajing may recover.  The Court now, therefore, revises that judgment, and, after calculating Kaplan's marital contribution, awards Jiajing $217,334.86.

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[9]

---

[9] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior

---

District Judge I adopt this format in honor of all the judicial
colleagues, state and federal, with whom I have had the
privilege to serve over the past 46 years.